IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| Henry C. FICKLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:09-CV-191 (MTT) |
| | ) |
| BIBB COUNTY SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment (Doc. 20) (the "Motion"). For the following reasons, the Motion is **DENIED** on the Plaintiff's retaliation claims with regard to his reassignment to ninth grade and **GRANTED** on the Plaintiff's remaining claims.

### I.    FACTUAL BACKGROUND

Plaintiff Henry C. Ficklin, currently age 61, has been employed with the Bibb County School District ("BCSD") as a certified educator since 1973. Ficklin received his leadership certificate from the Georgia Professional Standards Commission in 2003. Ficklin also completed the BCSD's two-year Administrator's Institute of Leadership in 2006. Ficklin has served as social studies department chair at Southwest High School. In addition to his responsibilities at work, Ficklin serves as a pastor and was a member of the Macon City Council from 1979 to 2007.[1]

---

[1] Ficklin was again elected to the Macon City Council in 2010.

Ficklin claims the BCSD discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA") when it did not select him to fill several principal and assistant principal positions for which he applied.[2] Although Ficklin alleges that he began applying for administrative positions in 2003, he provides no evidence of any specific positions for which he applied and for which a younger person was hired until he applied to be an assistant principal at Southwest in 2007.[3]

Ficklin claims that he informally served as "building principal," which apparently is akin to assistant principal, at Southwest during the 2006-2007 school year and that the Southwest principal recommended him for an official appointment to be an assistant principal. At the time, Southwest had a very low graduation rate and had not satisfied "adequate yearly progress" requirements.[4] Although the BCSD does not dispute that Ficklin expressed an interest in an assistant principal position at Southwest and it agrees that the Southwest principal had "mentioned" that Ficklin was interested in the position, Southwest's principal had not compiled a pool of eligible candidates as required by BCSD

---

[2] Although Ficklin provides a list of 31 individuals who are allegedly younger than him and who were promoted to principal or assistant principal, he does not assert a systemic disparate treatment claim. In fact, Ficklin was largely unable to provide the ages of the individuals named in the list; he offers no statistical analysis; and he provides no expert opinion concerning the meaning and effect of this list of 31 people. *See, e.g.*, *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1270-72 (11th Cir. 2000) (illustrating level of detail used in discrimination actions based on statistical disparity).

[3] The BCSD notes that Ficklin applied for a vacant principal position at Appling Middle School near the end of the 2005-2006 school year. Specifically, Ficklin wrote a "letter of interest" to then Superintendent Sharon Patterson. He received no response to this letter. Nowhere in Ficklin's Complaint or summary judgment pleadings does he contend that he was qualified for this specific position and, in any event, he offers no evidence with regard to whom, if anybody, was selected for the position.

[4] Adequate yearly progress requirements were established by the No Child Left Behind Act of 2001. 20 U.S.C. § 6311(b)(2).

policy and he had not conducted interviews, which is also required by BCSD policy. Accordingly, the position was not filled during the 2006-2007 school year.

However, the BCSD admits that its Board of Education discussed whether Ficklin would be a "good fit" for the position. Some Board members expressed concern that because of his many activities, Ficklin would not be able to devote sufficient time to the duties of an assistant principal at a struggling school such as Southwest. The Board also questioned whether Ficklin had the necessary "skill sets" to meet the challenges at Southwest. Again, however, the Board did not fill the position that school year.[5]

For the 2007-2008 school year, the BCSD appointed Brenda Edwards to fill the vacant Southwest assistant principal position.[6] Edwards is eight years younger than Ficklin. Ficklin does not dispute that Edwards was selected because of her strength in "curriculum, instruction, and assessment" and because she had served as an Instructional Coach at Southwest. Statement of Material Facts, ¶ 26 (Doc. 21). In this position, Edwards mentored teachers, modeled classroom instruction, analyzed test scores, helped to adapt instruction to areas in which scores indicated there were weaknesses, assisted in "differentiation of instruction," and observed classrooms. Because of this, the BCSD contends, and again Ficklin does not dispute, that Edwards was qualified to "assess the areas that needed improvement and create strategies to improve those areas." *Id.* Also, Edwards had participated in the Teacher Leader Program offered by the BCSD, a program

---

[5] Ficklin initially claimed Gregory Cubit, a younger individual, was selected for the assistant principal position in the Fall of 2006, but Cubit was never appointed assistant principal of Southwest.

[6] The record is silent as to whether Southwest's principal, at that time, interviewed eligible candidates.

that focused on curriculum, instruction, and assessment. Additionally, Edwards' experience was much broader than Ficklin's, who has only taught social studies.

Next, Ficklin contends that he was not selected for either of two vacant assistant principal positions at Howard High School, a school that first opened for the 2008-2009 school year. Because Howard was a new high school, the BCSD decided to fill one position by transfer of an assistant principal serving at another high school in the district. Thus, the BCSD did not accept applications for that position. Rather, this position was filled by Charlene Curry who is eight years younger than Ficklin. Curry had 11 years' administrative experience.

Applications were accepted for the remaining assistant principal position and Ficklin was one of six applicants who were interviewed by Howard Principal Karen Yarbrough and two assistant superintendents for school administration. Based on the results of these interviews, the Board selected Kevin Van Tone who is 28 years younger than Ficklin. The BCSD claims that Van Tone was more qualified because he had three years' experience as a high school assistant principal. The BCSD claims this was particularly important because Yarbrough's previous administrative experience had been with elementary and middle schools.

An assistant principal position became vacant at Howard again for the 2009-2010 school year. Ficklin applied for and was interviewed for this position, but the Board eventually selected Stacey Bennett, whose age was not provided by either party, although the BCSD does not dispute that Bennett is younger than Ficklin. The BCSD contends that Bennett possessed valuable experience that Ficklin lacked. Specifically, she had served as the Performance Learning Coach/Instructional Coach at Rutland High School.

Ficklin also claims that the BCSD retaliated against him for asserting his ADEA rights and he alleges the specific acts of retaliation in his Amended Complaint. First, Ficklin claims that the BCSD retaliated against him by promoting younger applicants to positions of leadership. In this regard, his claim for retaliation factually overlaps his failure to promote claims and the relevant facts are discussed above.

Second, Ficklin claims the BCSD retaliated against him by delaying a "research request." While Ficklin was writing his doctoral dissertation, he submitted a request to conduct research with the Office of the Deputy Superintendent for Support Services. Support Services then forwarded this request to the Research and Program Evaluation Committee (the "Committee") for consideration at its March 15, 2009, meeting. Research requests are only evaluated on March 15, September 15, and December 15. The Committee allegedly did not evaluate any research requests at the March 15 meeting because a key member was called away to investigate a break-in at a testing site. However, Ficklin's request was approved at the September 15, 2009, meeting. Ficklin claims the delay caused him to complete his dissertation three semesters late at a cost of approximately $1,600 per semester.

Next, Ficklin claims the BCSD blocked a grant request because he asserted his ADEA rights. Ficklin is Director of the Law Academy, a magnet program at Southwest, and plans numerous events for the program, including Law Day. Ficklin alleges that he unsuccessfully applied for a Georgia Department of Labor grant to fund Law Day in 2008. On March 4, 2009, Ficklin again applied to the Department of Labor for the grant. Ficklin alleges that the Department informed him that the grant had been approved and that he could "start spending," which Ficklin apparently interpreted to mean that he could incur

obligations with various vendors. When Southwest's principal learned of this, he met with Ficklin, on or about April 21, 2009, and informed him that the "central office" had to review the grant. Apparently, Ficklin was under the impression that the principal had the authority to "sign off" on the contract.

Because of a looming Department of Labor deadline and because Ficklin, in effect, was spending money the BCSD did not yet have, the BCSD hurriedly investigated the grant. This investigation revealed "serious concerns" over whether the BCSD could comply with the grant's requirements. Moreover, the BCSD could not determine whether vendors had complied or would comply with the grant requirements. Also, Ficklin failed to comply with BCSD rules which required all grant applications to be submitted using a particular form and in a particular format. Although her letter is not in the record, both parties agree that then Deputy Superintendent for Administration Sylvia McGee wrote Ficklin on October 7, 2009 --- the same day as the research request approval --- and informed him that the BCSD would not approve the grant. However, the BCSD did agree to reimburse Ficklin for any out-of-pocket expenditures and to cover any obligations he had incurred with vendors.

Finally, Ficklin claims the BCSD retaliated against him by reassigning him to ninth grade. Beginning in 2000,[7] he taught tenth through twelfth graders at Southwest, but in 2005 he began teaching only upperclassmen. Ficklin was reassigned to teach ninth graders at the start of the 2009-2010 school year. Ficklin was not aware he had been reassigned until he attended the pre-planning meeting in which class schedules were

---

[7] In 1979, Ficklin transferred from Ballard B. Junior High School to Southwest because he wanted to teach high school. He later transferred to Southeast High School in 1988 and returned to Southwest in 2000.

distributed.  Ficklin states that teaching upper level courses is "generally perceived" as more prestigious.  Specifically, according to Ficklin, teaching upperclassmen is more prestigious than teaching ninth graders:

> [b]ecause you're teaching a higher level of kids who are more mature and who hopefully have a higher interest in completing high school than children at the ninth grade.  You have more discipline problems at the ninth grade.  You have more discipline referrals at the ninth grade.  You have more people out of place at the ninth grade.  Once a child gets to the eleventh grade, generally we hope that that child will complete high school and that all the problems that ninth graders and sometimes tenth graders have are behind them."

Ficklin Dep. 239:17-25, (Doc. 23, Attachment 2).

## II.  DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material facts exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

## A. Failure to Promote Claims

The ADEA makes it unlawful for an employer to "to fail or refuse to hire … any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Ficklin has no direct evidence of age discrimination. Rather, like most victims of alleged job discrimination, he relies on circumstantial evidence, and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make his case. Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination, which a plaintiff can do by demonstrating that (1) he was a member of the protected group of persons between the ages of 40 and 70; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position that he sought; and (4) he was qualified to do the job for which he was rejected. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

The burden then returns to the plaintiff to prove that the employer's reasons are pretextual. *Id.* at 253. The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by

showing that the employer's proffered explanation is unworthy of credence."[8] *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis added). If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman,* 229 F.3d at 1030. If a defendant articulates more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive summary judgment. *Id.* at 1037. If a plaintiff attempts to prove pretext by showing that he was more qualified than the person selected to fill a position, "the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff."[9] *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 772 (11th Cir. 2005).

---

[8] The use of the disjunctive is significant and it underscores a potentially confusing aspect of the *McDonnell Douglas* test. When stated in the conjunctive, i.e., that the employee must prove that the proffered explanation is false *and* the true reason is discrimination, it harkens back to the so-called "pretext-plus" approach to discrimination analysis. As noted by Judge Wilson in his concurring opinion in *Conroy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993) "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination." Yet it was in *St. Mary's* that the Supreme Court, notwithstanding its holding, also said that an employer's reason "cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." 509 U.S. at 515. Even subsequent to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), which supposedly disposed of any lingering viability of pretext-plus analysis, courts continue to cite *St. Mary's* for the proposition that the employee must prove the employer's reason is false *and* that discrimination was the true reason for the employer's action. *See Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007); *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

[9] In this regard, the BCSD asks the Court to apply the "jump off the page and slap you in the face" standard for determining pretext when a plaintiff contends he was more qualified than the applicant who was hired. This standard apparently emanates from a jury charge quoted in *Deines v. Texas Department of Protective and Regulatory Services*, 164 F.3d 277, 280 (5th Cir. 1999):

> Also, you as a jury are not here simply to second guess the defendant's hiring decision as to which candidate was best qualified or best suited for the job. Therefore, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.

If the employee meets this final burden, then the finder of fact may find the employer liable for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

However, successful navigation of the *McDonnell Douglas* test does not necessarily guarantee that a plaintiff can survive summary judgment. In *Reeves*, the Supreme Court held that there are "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."[10] 530 U.S. at 148. In this event, judgment as a matter of law for the defendant is appropriate. *Chapman*, 229 F.3d at 1025 n.11. At least in the Eleventh Circuit this marked a significant change in the law. Before *Reeves*, the Eleventh Circuit had held that an employer was never entitled to judgment as a matter of law once a plaintiff offered sufficient evidence of pretext. *Combs*, 106 F.3d at 1538.

---

This "jump off the page and slap you in the face" standard found its way into Eleventh Circuit jurisprudence and was often cited, with approval, until the Supreme Court's decision in *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006). The Supreme Court was not impressed: "The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." While it may be understandable that the BCSD would want to urge the Court to employ such a catchy sounding standard, it would be better to defer to the Supreme Court.
[10] Specifically, the Court noted that:

> an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148. The Court determined the following factors are relevant in determining whether judgment as a matter of law is appropriate: "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id*. at 148-49.

Finally, in the application of the *McDonnell Douglas* test in age discrimination cases, courts must take into account the Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.,* ___ U.S. ___, 129 S. Ct. 2343 (2009). In *Gross,* the Supreme Court held that the ADEA does not authorize "mixed motives" age discrimination cases. While mixed motive cases are permissible under Title VII, a plaintiff alleging age discrimination "must prove that age was the 'but-for' cause of the employer's adverse decision." ___ U.S. at ___, 129 S.Ct. at 2350.[11]

In the typical case, it is relatively easy for a plaintiff to establish a prima facie case and this case is no different. Ficklin was over 40 at the time of the alleged discrimination and thus was a member of the protected group of persons between the ages of 40 and 70. Ficklin was not selected to fill the vacant assistant principal positions at Southwest and Howard and thus he was subjected to adverse employment actions. With one exception, the record is sufficient to establish that the individuals selected for those positions were substantially younger than Ficklin. The exception is the selection of Bennett to fill the assistant principal position at Howard. Although the BCSD concedes that Bennett is younger than Ficklin, there is no evidence that she is "substantially younger" than Ficklin. Finally, Ficklin was clearly qualified to fill the positions for which he was not selected.[12] Accordingly, with the exception of Ficklin's claim that he was improperly rejected for the

---

[11] In *Gross*, the Supreme Court also observed that "the Court ha[d] not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* … utilized in Title VII cases is appropriate in the ADEA context." __ U.S. at __, 129 S. Ct. at 2349 n.2. However, the Eleventh Circuit, and every other circuit addressing the issue, has continued to apply the *McDonnell Douglas* test in ADEA cases.

[12] Initially, the BCSD argued that Ficklin failed to establish the qualified prong of his prima facie case because the individuals selected were more qualified than Ficklin. However, as conceded by the BCSD at oral argument, this argument addresses the relative qualifications of the persons considered for the vacant positions, rather than the basic qualifications for the position and therefore is relevant in the context of pretext, rather than the prima facie case.

assistant principal position at Howard for the 2009-2010 school year, Ficklin has established a prima facie case of discrimination.

Although the BCSD asserts numerous reasons for not promoting Ficklin, its primary reason is the selected candidates were more qualified than Ficklin. If established, Ficklin can only rebut this legitimate, nondiscriminatory reason by establishing that no reasonable impartial person could have chosen the candidates over him.

Here, the record reveals that all of the selected candidates had leadership experience and Curry and Van Tone had prior administrative experience. Specifically, Edwards served as Instructional Coach at Southwest before being appointed assistant principal at Southwest. Edwards had a strong background in curriculum, instruction, and assessment. Edwards, unlike Ficklin, had experience across many academic subjects. Additionally, Edwards participated in the Teacher Leader Program. Curry had 11 years of administrative experience before being appointed assistant principal at Howard. Van Tone had three years of experience as a high school assistant principal before being appointed assistant principal at Howard. Although Ficklin did not establish that Bennett was substantially younger than him, it bears mentioning that Bennett too had prior leadership experience and experience in curriculum, instruction, and assessment because she formerly served as Performance Learning Coach/Instructional Coach at Rutland before being appointed assistant principal at Howard.

Perhaps not surprisingly, given the difficulty of proving pretext when an employer claims it hired a more qualified applicant, Ficklin makes no serious argument that "no reasonable impartial person" could have selected Edwards, Curry, and Van Tone over him. He does question whether the BCSD actually hired Bennett for her prior experience in

curriculum, instruction, and assessment because notes from her interview do not mention curriculum and instruction. Apart from the fact that Ficklin did not establish a prima facie case with regard to the BCSD's decision to hire Bennett, the interview notes he cites are from a previous year when neither Bennett nor Ficklin were selected. Thus, even in the case of Bennett, Ficklin has failed to prove pretext.

Accordingly, because Ficklin has not established that the BCSD's reasons for hiring other applicants were pretextual, the Motion should be granted on Ficklin's claim for discrimination pursuant to 29 U.S.C. § 623(a)(1).

**B.     Retaliation Claims**

Even if a plaintiff cannot prevail on the underlying claim of discrimination, he may recover for retaliation. It is unlawful for an employer to discriminate against an employee for making a charge pursuant to the ADEA. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation in violation of the ADEA, a plaintiff must establish that (1) he engaged in protected expression; (2) he was subsequently subjected to adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). To establish a prima facie case of retaliation, the adverse employment action must be one a reasonable employee would have found to be materially adverse. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Additionally, the Supreme Court requires causal links based on mere temporal proximity to be "very close" and approvingly cited circuit court decisions holding three- and four-month periods insufficient to establish a causal connection. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Eleventh Circuit has recognized that a seven-

week temporal proximity between acts could establish a causal connection.  *Nicholas v. Bd. of Trustees of Univ. of Ala.*, 251 Fed. Appx. 637, 644 (11th Cir. 2007).  However, the Eleventh Circuit recently held that a two-month period is not "very close."  *Williams v. Waste Mgmt., Inc.*, 2011 WL 207932, at *3 (11th Cir. 2011).

If a plaintiff establishes a prima facie case, the defendant may overcome the resulting presumption of retaliation by articulating a legitimate, nondiscriminatory reason for its actions. *Hairston*, 9 F.3d at 919.  If the defendant meets this burden of production, the burden shifts back to the plaintiff to establish pretext.  *Id.*

The only retaliatory action that merits extended discussion is Ficklin's claim that he was told when he reported for pre-planning at the beginning of the 2009-2010 school year that he had been relegated to teaching freshmen.[13]  The BCSD concedes that Ficklin engaged in protected activity when he filed his lawsuit on June 5, 2009.  However, the BCSD denies that Ficklin's reassignment constitutes an adverse employment action.

*Burlington Northern* clearly recognizes that a reassignment can be materially adverse even though his job classification does not change.  548 U.S. at 70-71.  While reassignments are not materially adverse per se, the reassignment must be "'judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"  *Id.* at 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  The Court also stated that qualifications and objective considerations of

---

[13] Ficklin's claim that the BCSD retaliated against him by hiring younger individuals is addressed above.  In sum, Ficklin fails to prove that the BCSD's reasons for hiring allegedly younger applicants were pretextual.  With regard to his claims that a research request was delayed and that the Department of Labor grant was not approved, and assuming that Ficklin suffered adverse employment actions, Ficklin makes no effort to prove that the BCSD's legitimate, nondiscriminatory reasons for its actions are pretextual.

prestige could be considered in determining whether a reassignment is materially adverse. *Burlington Northern*, 523 U.S. at 81.

Courts have not definitively decided whether a teacher's reassignment is materially adverse. Indeed, it likely is not possible to fashion a more definitive answer because the inquiry is necessarily fact sensitive and thus case specific. For example, the Seventh Circuit recently held that a reassignment from twelfth grade to seventh grade was not a materially adverse action. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 728-30 (7th Cir. 2009). In *Lucero*, the plaintiff was reassigned from seventh and eighth grade to teach a new Honors/Advanced Placement course for twelfth graders. *Id.* at 724. After complaining about a hostile work environment created by students, the plaintiff was reassigned to seventh grade after one year of teaching twelfth grade. *Id.* at 727. The Seventh Circuit, affirming summary judgment for the defendant, largely based its decision on the fact that the plaintiff offered only her "subjective[] belie[f] that teaching High School students is more prestigious than teaching Junior High students," rather than any objective evidence to support her claim that teaching twelfth grade was more prestigious than teaching seventh grade. *Id.* at 730.

Applying the *Burlington Northern* standard to these facts, a reasonable person in Ficklin's position could find the reassignment materially adverse because the reassignment was unexpectedly made at a 2009-2010 pre-planning meeting, Ficklin had taught non-freshmen at Southwest for nearly a decade, and Ficklin testified that teaching upper level classes is "generally perceived" as more prestigious. More specifically, he cited the significant differences in disciplinary issues and the fact that many less serious students leave school before the eleventh or twelfth grade, suggesting, apparently, that teaching

seniors is easier or not as burdensome.  This may or may not be true, and one may question whether teachers should be motivated by such considerations.  But if, as in *Burlington Northern,* reassignment to a position requiring more arduous tasks can be materially adverse, even though the position remains in the same job classification, then reassignment of a teacher to a position requiring him to contend with more unruly students can constitute an adverse employment action.  Moreover, the Eleventh Circuit interprets *Burlington Northern* as "strongly suggest[ing] that is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse.'"  *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008).

Next, Ficklin must demonstrate a causal connection between his protected activity and an adverse employment action.  Here, Ficklin alleges the BCSD became aware of his lawsuit on June 9, 2009, when an article appeared in the local newspaper.  A causal connection likely exists because Ficklin claims he was reassigned during a 2009-2010 pre-planning meeting, which took place approximately two months after the BCSD allegedly became aware of this action.  While *Williams* held that two months is not very close, this matter is distinguishable because Ficklin filed this action during the summer break and he was notified of his reassignment immediately upon return to school.

In sum, Ficklin has established a prima facie case of retaliation with regard to his "demotion" from teaching upperclassmen to teaching freshmen.

Because Ficklin has established a prima facie case of retaliation, the burden of production shifts to the BCSD to articulate a legitimate, nondiscriminatory reason for reassigning Ficklin.  Although this burden of production is minimal, the BCSD has failed to meet it.  The BCSD argues that principals, rather than the Board, reassign teachers, but

that provides no cover for the BCSD. Clearly, the BCSD can act through its principals and the actions of a principal may be imputed to a school district. See, e.g., Lucero, 566 F.3d at 727 (allegedly retaliatory reassignment made by principal). Recognizing that because the principal is responsible for the reassignment, then the principal's reasons for the reassignment must be examined. McGee claims that principals *generally* reassign teachers based on what best fits the students' needs. Of course, this does not establish why the Southwest principal reassigned Ficklin to the ninth grade. In short, there is no explanation for why Ficklin was reassigned. While the BCSD's burden may be minimal, it nevertheless exists and must be met. Because the BCSD fails to articulate a legitimate, nondiscriminatory reason for its actions, a genuine issue of material fact exists on Ficklin's retaliation claim.

Accordingly, the Motion should be denied on Ficklin's claim for discrimination pursuant to 29 U.S.C. § 623(d) with regard to his reassignment and granted on the remaining retaliation claims.

**C.      Equal Protection Claims**

Finally, Ficklin argues the BCSD violated the Equal Protection Clause of the Federal Constitution and the Equal Protection Clause of the Georgia Constitution. With regard to the Federal Constitution, it is clear "the ADEA is the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by the ADEA." Ring v. Crisp County Hosp. Auth., 652 F. Supp. 477, 482 (M.D. Ga. 1987). A plaintiff bringing a 42 U.S.C. § 1983 claim must allege conduct "distinct from any claim of age discrimination alleged by the plaintiff." Id. Here, Ficklin cannot prevail on a Section

1983 claim because his constitutional claim is not distinct from his claim of age discrimination.

With regard to Ficklin's claims pursuant to the Georgia Constitution, it is not clear that the ADEA was meant to preempt equal protection clauses of state constitutions. However, even if the ADEA does not preempt the Equal Protection Clause of the Georgia Constitution, the BCSD has not violated the state constitution. Article I, § 1, ¶ 2 of the Georgia Constitution provides equal protection under the laws. Ficklin must prove that he was intentionally discriminated against to prevail on an age discrimination claim pursuant to the Georgia Constitution. *Suber v. Bulloch County Bd. of Educ.*, 722 F. Supp. 736, 743 (S.D. Ga. 1989). As discussed above, Ficklin cannot prove age discrimination by the BCSD.

Accordingly, the Motion should be granted on Ficklin's constitutional claims.

### III. CONCLUSION

For the foregoing reasons, the Motion is **DENIED** on Ficklin's retaliation claims with regard to his reassignment to ninth grade and **GRANTED** on Ficklin's remaining claims. All outstanding motions in this matter are **DENIED** as moot.

**SO ORDERED**, this the 17th day of February, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT